Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MARTA DEL MAR SÁNCHEZ GARCÍA<br><br>Apelante<br><br>v.<br><br>ENVIRONMENTAL QUALITY LABORATORIES INC.<br><br>Apelado | KLAN202500287 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2024CV02471<br><br>Sobre. Despido Injustificado; Ley 80 de 30 de mayo de 1976 y otros |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Juez Lotti Rodríguez[1].

Lotti Rodríguez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de octubre de 2025.

Comparece la Sra. Marta Del Mar Sánchez García (en adelante, Sra. Sánchez García o apelante) mediante un *Recurso de Apelación* en el que nos solicita que dejemos sin efecto la *Sentencia* emitida y notificada el 27 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI). Mediante dicho dictamen el foro primario declaró Con Lugar una solicitud de desestimación presentada por Environmental Quality Laboratories, Inc. (en adelante, Compañía o apelada) y desestimó con perjuicio la *Querella* presentada por la Sra. Sánchez García en virtud de la Regla 39.2 (c) de Procedimiento Civil, 32 LPRA Ap. V., R. 39.2 (c).

## I.

El 1 de mayo de 2024, la parte apelante presentó una *Querella* sobre despido injustificado y discrimen por religión, en contra de la Compañía apelada, bajo el procedimiento sumario de la Ley Núm. 2

---

[1] Conforme a la OATA-2025-078 del 14 de mayo de 2025, la Hon. Glorianne M. Lotti Rodríguez sustituyó a la Hon. Monsita Rivera Marchand.

del 17 de octubre de 1961, según enmendada, conocida como la Ley de Procedimiento Sumario de Reclamaciones Laborales, 32 LPRA sec. 3118 *et seq.*[2] En la misma, alegó haber trabajado ininterrumpidamente para la Compañía desde el 7 de enero de 2004, hasta el 1 de abril de 2024, fecha en que fue despedida. Sostuvo que la Compañía la despidió sin justa causa, en violación con la Ley Núm. 80 del 30 de mayo de 1976, según enmendada, conocida como la Ley Sobre Despidos Injustificados, 29 LPRA sec. 185a *et seq.* (Ley 80), y que su despido fue discriminatorio ya que se debía a sus ideas religiosas, en violación de la Ley Núm. 100 del 30 de junio de 1959, según enmendada, conocida como la Ley Antidiscrimen de Puerto Rico, 29 LPRA sec. 149 *et seq.* (Ley 100).

Solicitó la suma de $60,544.00 en concepto de mesada por el alegado despido injustificado, los salarios dejados de devengar, una indemnización por la suma de $40,000.00 por concepto de daños económicos, $40,000.00 por concepto de angustias mentales, el doble de esas cantidades conforme a lo permitido por la Ley 100, 25% sobre dichas sumas por concepto de honorarios de abogado y la reinstalación a su empleo.

Por su parte, la Compañía compareció y presentó su *Contestación a la Querella*, en la que adujo, entre otras cosas, que el despido de la apelante fue el resultado de un proceso de investigación interna que llevaron a cabo en respuesta a una serie de quejas e imputaciones de los compañeros de la Sra. Sánchez García por su alegada conducta impropia, desordenada y contraria a las políticas y procedimientos de la Compañía.[3] Sostuvo que el despido fue por justa causa. Añadió que, entre marzo y abril de 2022, la apelante ya había sido suspendida de empleo y sueldo como medida disciplinaria por el resultado de una investigación realizada

---

[2] Entrada #1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI.
[3] Entrada #6 del SUMAC del TPI.

por la Compañía por conducta similar a la que provocó su despido en 2024. Asimismo, la parte apelada negó afirmativamente que el despido estuviera relacionado con las ideas religiosas de la apelante. Por lo cual, solicitó al Tribunal que desestimara la *Querella* presentada.

Luego de culminado el descubrimiento de prueba, las partes presentaron el *Informe sobre Conferencia Preliminar entre Abogados (Informe)*[4], que fue discutido en la Conferencia con Antelación ~~de~~ al Juicio celebrada el 20 de noviembre de 2024.[5] En esta vista surgió una controversia respecto al orden en que debía presentarse la prueba, ya que la parte apelante entendía que el primer turno correspondía a la parte apelada. Por ello, el TPI le concedió un término a las partes para que presentaran memorandos de derecho en el que fundamentaran sus posiciones.

Como resultado de la vista, se marcó la evidencia documental estipulada entre ambas partes y el foro primario determinó que todas las reservas con respecto a la evidencia documental se tendrían por no puestas, salvo que fuera para fines de impugnación. Respecto a las reservas sobre la prueba testifical, el TPI determinó que, de igual forma, se tenían por no puestas y que todo testigo que no hubiese sido anunciado en el *Informe* no podría ser utilizado durante el juicio. Con esas enmiendas, el Tribunal acogió el *Informe* preparado por las partes.

El 16 de diciembre de 2024, el Tribunal emitió una *Resolución* en la que determinó que, luego de evaluados los escritos de ambas partes, el primer turno para presentar la prueba le correspondía a la parte apelante.[6] El foro primario razonó que, contrario a lo planteado por la apelante, las presunciones establecidas en la Ley 80 y en la Ley 100 no aplicaban en este caso en virtud de las

---

[4] Entrada #20 del SUMAC del TPI.
[5] Entrada #24 del SUMAC del TPI.
[6] Entrada #26 del SUMAC del TPI.

enmiendas que introdujo la Ley Núm. 4 del 26 de enero de 2017, según enmendada, conocida como la Ley de Transformación y Flexibilidad Laboral, 29 LPRA sec. 121 *et seq.* Por ello, de conformidad con la Regla 110 de las Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 110, el Tribunal determinó que el peso de la prueba en primer turno correspondía a la parte apelante.

Durante la celebración del juicio en su fondo, el 17 de marzo de 2025, el primer turno para declarar recayó en la apelante, conforme la *Resolución* previamente emitida por el Tribunal. Culminado su testimonio, el representante legal de la parte apelante solicitó que se llamara como testigo hostil a la Gerente de Recursos Humanos de la Compañía, la Sra. Liza Barreto, quien había sido anunciada como testigo de la parte apelada en el *Informe sobre Conferencia Preliminar entre Abogados*.[7] Sin embargo, ante la objeción de la parte apelada y fundamentado en la determinación previa, el foro primario se reiteró en su decisión de que todo testigo que no hubiese sido anunciado en el *Informe* no podría ser utilizado durante el juicio.[8] En consecuencia, la parte apelante sometió el caso a la consideración del Tribunal.[9]

Ante ello, en corte abierta, la parte apelada presentó una moción de desestimación *non suit* al amparo de la Regla 39.2 (c) de Procedimiento Civil, 32 LPRA Ap. V., R. 39.2 (c). Luego de escuchar los argumentos de ambas partes, el Tribunal declaró Con Lugar la moción. En la misma vista, la parte apelante solicitó *Reconsideración* a la determinación del TPI, la cual fue declarada No Ha Lugar[10] y posteriormente, el foro primario emitió su

---

[7] Transcripción de la Prueba Oral (TPO) de la vista de juicio en su fondo celebrada el 17 de marzo de 2025, págs. 161-165; véase *Minuta* en la Entrada #24 del SUMAC del TPI.
[8] Así lo hizo constar el foro primario en su *Sentencia* en la nota al pie de página #3.
[9] TPO pág. 165, líneas 17-24; pág. 166, líneas 1-5.
[10] TPO págs. 181-184.

determinación por escrito mediante *Sentencia* del 27 de marzo de 2025.

El TPI determinó probados los siguientes hechos:

## A. HECHOS ESTIPULADOS

Previo a la vista en su fondo, las partes llegaron a las siguientes estipulaciones, las cuales fueron leídas para récord y advinieron hechos probados:

1. La Querellante comenzó a trabajar en la Compañía el 12 de enero de 2004.

2. La Querellante fue despedida el 1 de abril de 2024.

3. Al momento de su despido, el salario por hora de la Querellante era de $17.60.

4. La Querellante era empleada a tiempo completo.

## B. HECHOS ESTABLECIDOS DURANTE EL JUICIO

### A. Amonestaciones

5. El 23 de enero de 2013, la Querellante fue objeto de un Informe de Acción Disciplinaria por, entre otras razones, exhibir falta de comunicación y proactividad. Se comprometió a tener mejor comunicación con sus compañeras de empleo, ser proactiva, y precisó que fomentaría una relación de unión, apoyo, compañerismo y cooperación con éstas.

6. El 17 de agosto de 2016, la Querellante fue amonestada por interrumpir y dirigirse a su supervisora de forma alterada. Se le reiteró a la Querellante que utilizara un tono cordial, de respeto y profesionalidad al dirigirse tanto a su supervisora como a sus compañeros de empleo.

7. El 17 de marzo de 2017, la Querellante fue amonestada por incumplir con las instrucciones de su supervisora. Se le enfatizó que, conforme se le había indicado en otras ocasiones, para el Departamento de Microbiología es importante mantener comunicación efectiva y trabajar en equipo.

8. El 28 de noviembre de 2017, la Querellante fue amonestada por incumplir con las buenas prácticas de laboratorio.

9. El 20 de diciembre de 2017, la Querellante fue amonestada por incumplir con las buenas prácticas de laboratorio y los *standard operating procedures* de la Compañía.

10. El 30 de enero de 2018, la Querellante fue amonestada por incumplir con las buenas prácticas de laboratorio y los *standard operating procedures* de la Compañía.

11. El 4 de diciembre de 2018, la Querellante fue amonestada por incumplir con las buenas prácticas de

laboratorio y los *standard operating procedures* de la Compañía.

12. El 28 de mayo de 2020, la Querellante fue amonestada por incumplir con los procedimientos y métodos analíticos de la Compañía.

**B. Evaluaciones de desempeño**

13. En su evaluación de desempeño de octubre de 2014 a septiembre de 2015, la Querellante obtuvo una puntuación de 2 de 5 en su capacidad de interactuar positivamente con sus compañeros de empleo. Igualmente, ésta obtuvo una puntuación de 2 de 5 en capacidad de manejar situaciones conflictivas con personas internas o externas. Además, se le puntualizó que requería mejorar la comunicación con sus compañeros de trabajo y trabajar en equipo.

14. En su evaluación de desempeño del 1 de octubre de 2015 al 30 de septiembre de 2016, la Querellante obtuvo una puntuación de 2 de 5 en su capacidad de interactuar positivamente con sus compañeros de empleo. Igualmente, ésta obtuvo una puntuación de 2 de 5 en su en capacidad de manejar situaciones conflictivas con personas internas o externas. Asimismo, obtuvo una puntuación de 2 de 5 en interacción con clientes, suplidores y personas externas. De otra parte, se le reiteró que tenía que mejorar la comunicación con sus compañeros de trabajo, trabajar en equipo, y ser proactiva con sus compañeros cuando hubiese un alto volumen de trabajo.

15. En su evaluación de desempeño del 1 de octubre de 2018 al 30 de septiembre de 2019, la Querellante obtuvo una puntuación de 2 de 5 en su capacidad de interactuar positivamente con sus compañeros de empleo. Se le señaló, además, que "el puesto requiere el trabajo en equipo con todos los compañeros. No trabajar en equipo limita el progreso y buen funcionamiento de la empresa. El departamento requiere trabajar en coordinación con compañero[s] de trabajo".

16. En su evaluación de desempeño del 1 de octubre de 2018 al 30 de septiembre de 2019, también se le señaló que el trabajo de técnico de laboratorio en microbiología requiere trabajo en equipo, comunicación efectiva e interacción profesional con todos los compañeros de empleo; y, que el no comunicarse, interactuar y cooperar limita el desempeño y la eficiencia del departamento y crea un ambiente incómodo de trabajo. Se le requirió mostrar actitud y comportamiento profesional y de trabajo, así como mantener cualquier situación o conflicto personal fuera del trabajo.

17. En su evaluación de desempeño del 1 de octubre de 2020 al 30 de septiembre de 2021, a la Querellante se le observó que, aunque había mejorado su comunicación hacia sus compañeros, se le requería colaborar en situaciones de alto volumen de trabajo y brindar apoyo a sus compañeros.

**C. Política contra el acoso laboral**

18. La Compañía adoptó una política contra el acoso laboral en el año 2018, antes de la aprobación de la "Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico", Ley Núm. 90 de 7 de agosto de 2020 ("Ley 90-2020"), 29 L.P.R.A. § 3111 et seq. Le entregó copia de ésta a la Querellante y condujo adiestramientos sobre la misma a sus empleados, incluyendo a la Querellante.

19. La Política y Protocolo Contra el Acoso Laboral de la Compañía vigente a la fecha de despido de la Querellante, en términos generales, define lo que constituye acoso laboral, prohíbe éste, y establece el procedimiento de querellas internas e investigación.

20. La Querellante fue adiestrada por la Compañía respecto al acoso laboral el 3l de septiembre de 2014 y el 21 de marzo de 2018.

21. La Querellante acusó recibo de las políticas contra el acoso laboral en el 2018, 2021 y 2022.

22. La práctica de la Querellante es solamente acusar recibo de documentos cuando, en efecto, los recibe.

**D. Suspensión de empleo y sueldo, y amonestación final**

23. El 18 de abril de 2022, alrededor de la 1:00 p.m., la Querellante fue citada a la oficina de la Gerente de Recursos Humanos, Liza Barreto, donde se le notificó una suspensión de empleo y sueldo por tres (3) días, y se le informó de una amonestación final.

24. Conforme el escrito de Amonestación Final y Suspensión de Empleo y Sueldo del 18 de marzo de 2022, la Compañía recibió una querella de acoso laboral contra la Querellante de que ésta constantemente hacía comentarios difamatorios, repetitivos e inadecuados en voz alta, criticaba el trabajo asignado y llevado a cabo por otros empleados, ignoraba a sus compañeras de empleo cuando éstas se dirigían a ella, ejercía presión en el aprendizaje de empleados nuevos, mostraba faltas de respeto y se burlaba de las instrucciones o directrices impartidas por su supervisora.

25. Luego de una investigación, la Compañía concluyó que la Querellante en efecto había incurrido en conducta contraria a la política de acoso laboral de la Compañía, que ésta fomentaba un ambiente de trabajo hostil, que desacreditaba los procesos de la Compañía, que su comportamiento era inaceptable y que la Compañía no aprobaba ese tipo de conducta y ambiente en el lugar de empleo.

26. En vista de ello, la Compañía prohibió a la Querellante hacer comentarios en voz alta que pudieran causar un ambiente hostil, de desánimo o crítica respecto a la Compañía y/o sus compañeros de empleo; ejercer presión sobre el personal en adiestramiento; dar instrucciones no autorizadas por su supervisora; así como hacer comentarios inapropiados tanto de los

procesos y procedimientos de la Compañía, como de las instrucciones impartidas.

27. La Compañía advirtió a la Querellante que esa Amonestación Final y Suspensión de Empleo y Sueldo constituía "una advertencia final y firme y se le advierte que violaciones adicionales a las normas, políticas y procedimientos de la empresa conllevaran el despido inmediato de su empleo. No se tolerará una falta más".

28. Previo a esa suspensión, la Compañía se había reunido con la Querellante debido a situaciones similares. También la había amonestado y señalado por escrito su necesidad de mejorar su comunicación y trabajo en equipo con sus compañeras de empleo.

29. Ese mismo día, 18 de abril de 2022, la Compañía repasó con la Querellante las normas, políticas y procedimientos de esta, incluyendo la política de acoso laboral.

30. La Querellante no tiene evidencia para establecer que no se hubiere presentado una querella de acoso laboral en su contra.

**E. Despido**
31. Tras regresar de vacaciones el 1 de abril de 2024, la Querellante fue citada a una reunión en la oficina de Barreto en la que también participó su supervisora, Virginia Valcourt.

32. En dicha reunión fue notificada de su despido y se le entregó la carta de despido.

33. La Querellante reconoce que Barreto tenía en su poder la carta de despido desde el mismo comienzo de la reunión, y fue esa carta la que le entregó al final de la reunión.

34. La carta de despido establece, entre otros asuntos, que el despido de la Querellante obedeció al "constante y continuo comportamiento y conducta inapropiada exhibida en el lugar de trabajo" por esta.

35. El día de su despido, a la Querellante también se le entregó una carta sobre sus derechos a la cubierta continuada de salud bajo el Consolidated Omnibus Budget Reconciliation Act (COBRA).

36. Culminada la reunión, la Querellante registró su salida.

37. La Querellante no tiene evidencia para demostrar que las razones para su despido conforme lo señalado por la Compañía en la carta de despido no son ciertas.

Así, a partir de los hechos antes relacionados, el foro primario

procedió con su análisis y concluyó que la apelante no presentó

prueba suficiente para sostener sus alegaciones de discrimen ni de

despido injustificado. Resaltó que ésta no probó tan siquiera pertenecer a la religión que alegaba practicar, no estableció un caso *prima facie* de discrimen, ni demostró que el despido fue un pretexto para ocultar el discrimen. Además, consideró la evidencia documental presentada por la Compañía, consistente en amonestaciones, evaluaciones de desempeño, suspensión de empleo y sueldo con advertencia final de despido, y determinó que la apelante incurrió en un patrón de conducta impropia que constituyó justa causa para su despido bajo la Ley 80.

Inconforme, el 7 de abril de 2025, la Sra. Sánchez García compareció ante nos mediante *Recurso de Apelación* y plantea la comisión de los siguientes errores:

> **PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPEDIR EL TESTIMONIO DE LA GERENTE DE RECURSOS HUMANOS, TESTIGO PREVIAMENTE JURAMENTADA Y ANUNCIADA POR LA PARTE QUERELLADA, CAUSANDO UN PERJUICIO SUSTANCIAL AL DEBIDO PROCESO DE LEY Y AL DERECHO A UN JUICIO JUSTO.**
>
> **SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ACOGER UNA MOCIÓN DE DESESTIMACIÓN SIN QUE LA PARTE APELANTE CULMINARA LA PRESENTACIÓN DE PRUEBA. ESTA ACTUACIÓN PRIVÓ A LA QUERELLANTE DE SU DERECHO PROCESAL A PRESENTAR SU CASO COMPLETO, CONFORME DISPONE LA REGLA 39.2(C) DE PROCEDIMIENTO CIVIL.**
>
> **TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL REALIZAR ADJUDICACIONES DE CREDIBILIDAD Y DETERMINACIONES DE HECHO SIN QUE SE HUBIERA COMPLETADO EL DESFILE DE PRUEBA, EN VIOLACIÓN A LA REGLA 39.2(C) DE PROCEDIMIENTO CIVIL.**
>
> **CUARTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO CONSIDERAR LA PRUEBA DOCUMENTAL ADMITIDA MEDIANTE ESTIPULACIÓN, IGNORANDO SU VALOR PROBATORIO.**
>
> **QUINTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO APLICAR EL MARCO LEGAL CORRESPONDIENTE PARA EVALUAR LAS ALEGACIONES DE DESPIDO INJUSTIFICADO Y DISCRIMEN POR RELIGIÓN. ESTO CONSTITUYÓ UNA INFRACCIÓN AL ANÁLISIS REQUERIDO BAJO LA LEY 80 Y LA LEY 100.**

**SEXTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE LA QUERELLANTE FALL[Ó] EN PROBAR QUE SU DESPIDO FUE SIN JUSTA CAUSA.**

La apelante sostiene que el foro primario violó su debido proceso al impedir la presentación de un testigo anunciado y al acoger una desestimación prematura bajo la Regla 39.2(c), adjudicando hechos y credibilidad sin concluir la prueba. Además, alega que se ignoró la evidencia documental admitida, no se aplicó correctamente el marco legal de la Ley 80 y la Ley 100 y, en consecuencia, se erró al concluir que su despido fue justificado.

Por su parte, la Compañía compareció mediante *Alegato de la Parte Apelada.* En síntesis, sostiene que el dictamen del TPI fue acertado, pues la apelante no logró cumplir con su carga probatoria, omitió hacer una oferta de prueba sobre la evidencia testifical excluida, reconoció no tener evidencia que desmintiera las razones alegadas para su despido y tampoco estableció un caso *prima facie* de discrimen. Por ello, sostiene que el despido respondió a una justa causa derivada de un patrón de conducta impropia y no a razones discriminatorias, por lo que la desestimación debe ser confirmada.

Con el beneficio de la comparecencia de las partes, el derecho y jurisprudencia aplicables, resolvemos.

**II.**

**A. Debido proceso de ley**

La Constitución de Puerto Rico dispone en su Artículo II, Sección 7, que "ninguna persona será privada de su propiedad o libertad sin un debido proceso de ley". Art. II, Sec. 7, Const. PR, LPRA, Tomo 1. El debido proceso de ley se refiere al "derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *Marrero Caratini v. Rodríguez Rodríguez,* 138 DPR 215, 220 (1995).

La garantía del debido proceso de ley opera en dos vertientes distintas: la procesal y la sustantiva. La vertiente sustantiva del

debido proceso de ley persigue proteger y salvaguardar los derechos fundamentales de las personas. *Landrau Cabezudo et al. v. Puertos et al.*, 2025 TSPR 7, 215 DPR ___ (2025); *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018); *Rivera Rodríguez & Co. v. Lee Stowell, Etc.*, 133 DPR 881, 887 (1993). Mientras que la vertiente procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Landrau Cabezudo et al. v. Puertos et al., supra*; *Picorelli López v. Depto. de Hacienda*, 179 DPR 720, 735-736 (2010); *Rivera Rodríguez & Co. v. Stowell Taylor, supra*, págs. 887-888.

Para que se active la protección que ofrece este derecho en su vertiente procesal, tiene que existir, en primer lugar, un interés individual de libertad o propiedad que se vea afectado por una acción del Estado. *Domínguez Castro et al. v. ELA I*, 178 DPR 1, 46 (2010); *Rodríguez Rodríguez v. ELA*, 130 DPR 562, 578 (1992); *Rivera Santiago v. Srio. de Hacienda*, 119 DPR 265, 273-274 (1987); *Board of Regents v. Roth*, 408 US 565, 569 (1972). En segundo lugar, se debe determinar las características mínimas con las que debe cumplir el proceso mediante el cual el Estado pretende afectar negativamente ese derecho constitucionalmente protegido. *Domínguez Castro et al. v. ELA I, supra*.

Por ello, se han establecido varios requisitos con los que debe cumplir todo procedimiento adversativo para satisfacer las exigencias mínimas del debido proceso de ley, en su vertiente procesal. *Id.*, pág. 47. Estos son: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado, (6) que la decisión se base en el récord, y (7) que la decisión final sea explicada o fundamentada. *Id.*, págs. 47-48.

Estos requisitos se entienden satisfechos siempre que se brinde a las partes oportunidad real de exponer sus planteamientos y situar al foro en posición de adjudicar adecuadamente las controversias.

**B. Manejo del caso por el Tribunal de Primera Instancia**

Es doctrina reiterada que los jueces de instancia gozan de amplia discreción y flexibilidad en el manejo cotidiano y la tramitación de los asuntos que se ventilan ante sus salas. *BPPR v. SLG Gómez-López*, 213 DPR 314, 334 (2023); *In re Collazo I*, 159 DPR 141, 150 (2003); *Vives Vázquez v.* ELA, 142 DPR 117, 141 (1996). La deferencia a su criterio responde al principio de que los tribunales apelativos no deben sustituir ni dirigir la conducción del trámite ordinario de los casos que corresponden al foro primario. *BPPR v. SLG Gómez-López, supra,* citando a *Mejías Montalvo v. Carrasquillo Martínez*, 185 DPR 288, 306-307 (2012). Como es sabido, dicho foro es el que mejor conoce las particularidades del caso y quien está en mejor posición para adoptar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final. *Id.*

En consecuencia, la norma general dispone que los foros apelativos no intervendrán en la discreción de los foros primarios, salvo que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. *BPPR v. SLG Gómez-López, supra*, pág. 334; *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 273 (2021). El uso adecuado de esa discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *BPPR v. SLG Gómez-López, supra,* pág. 335; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013); *Rivera Durán v. Banco Popular*, 152 DPR 140, 155 (2000).

No obstante, la deferencia cede cuando se acredita que el tribunal incurrió en un abuso de discreción, actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de

cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. *BPPR v. SLG Gómez-López, supra; Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023). Por lo tanto, si en la solicitud ante nuestra consideración no concurren tales criterios y la actuación del foro primario cuenta con un fundamento razonable y no afecta derechos sustanciales de las partes, debe prevalecer el criterio del juez de instancia, quien es, a fin de cuentas, el llamado a dirigir el proceso. *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

### C. Exclusión de evidencia

Las Reglas 104, 105 y 106 de las Reglas de Evidencia de 2009, 32 LPRA Ap. VI, R. 104-106, establecen los requisitos que debe satisfacer una parte que plantea en apelación que el foro de instancia excluyó indebidamente alguna prueba. En lo pertinente, la Regla 104 establece el requisito de hacer una oferta de prueba y dispone que:

> (b) [...] En el caso de exclusión errónea de prueba, la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. No será necesario invocar tal fundamento específico ni hacer la oferta de prueba cuando resultan evidentes del contexto del ofrecimiento.
>
> El Tribunal permitirá la oferta de prueba y determinará si debe hacerse mediante un resumen de la evidencia ofrecida o el interrogatorio correspondiente. El Tribunal podrá añadir cualquier manifestación que demuestre el carácter de la evidencia, la forma en que fue ofrecida, la objeción a su admisión y la resolución sobre la exclusión.

Por otro lado, en cuanto al efecto de error en la admisión o exclusión de evidencia, la Regla 105 dispone lo siguiente:

> (a) Regla general. —No se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que:
> > (1) La parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento

u oferta de prueba establecidos en la Regla 104 de este apéndice, y

(2) el tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita. 32 LPRA Ap. VI, R. 105.

Es decir, se autoriza a la parte que propone evidencia que fue excluida por el TPI a acudir en apelación para plantear que dicha exclusión fue errónea. Si se demuestra que la exclusión careció de fundamento, el Tribunal de Apelaciones tiene facultad para dejarla sin efecto, siempre que se cumpla con lo dispuesto en la citada Regla. Esto requiere que la evidencia excluida se haya presentado mediante una oferta de prueba y que el foro apelativo concluya que, de no haberse incurrido en el error, probablemente el resultado hubiese sido distinto. 32 LPRA Ap. VI, R. 105; *F.D.I.C. v. Caribbean Mktg. Ins. Agency*, 123 DPR 247, 260 (1989); *S. J. Credit, Inc. v Ramírez*, 113 DPR 181, 190 (1982).

El objetivo de hacer la oferta de prueba y que sea marcada para identificación, aun cuando no sea admitida, es poner al tribunal apelativo en posición de determinar la existencia de un error sustancial que justifique la revocación. Ernesto L. Chiesa, *Tratado de Derecho Probatorio*, Publicaciones J.T.S., 1998, Tomo II, págs. 1174-1175. Por ello, es indispensable exponer la naturaleza, propósito y pertinencia de la evidencia; de lo contrario, la omisión de la oferta de prueba implica renuncia al planteamiento en apelación. *Pueblo v. Rivero, Lugo y Almodóvar*, 121 DPR 454, 476 (1988).

En ese sentido, nuestro Tribunal Supremo ha expresado que el error en la admisión o exclusión de prueba no conlleva la revocación a menos que —habiéndose hecho una objeción adecuada y oportuna— el tribunal apelativo entienda que dicho error fue determinante o influyó sustancialmente en la sentencia impugnada. *Pueblo v. Martínez Solís*, 128 DPR 135, 162 (1991); *Pueblo v. Ruiz*

*Bosch,* 127 DPR 762, 786-787 (1991). Lo esencial, por tanto, es establecer si la sentencia hubiera sido distinta de no haberse producido el error. *Pueblo v. Mangual Hernández,* 111 DPR 136, 145 (1981).

En síntesis, para que la exclusión indebida de prueba conlleve la revocación de una sentencia, deben concurrir dos condiciones: (1) que la evidencia se haya traído oportunamente a la atención del tribunal mediante una oferta de prueba, y (2) que su exclusión haya tenido un efecto decisivo o sustancial en la decisión revisada.

De otra parte, la Regla 106, *supra,* faculta a un tribunal apelativo a revisar señalamientos de error en admisión o exclusión de prueba, e incluso a revocar la sentencia, aunque no se hubieran cumplido estrictamente los requisitos de la Regla 104. 32 LPRA Ap. VI, R. 106. No obstante, esta excepción exige que se verifique que: "(a) [e]l error fue craso ya que no cabe duda de que fue cometido; (b) el error fue perjudicial porque tuvo un efecto decisivo o sustancial en la sentencia o decisión cuya revocación se solicita, y (c) el no corregirlo resulte en un fracaso de la justicia." *Id.*

**D. Desestimación por falta de prueba suficiente o *non suit***

La Regla 39.2 (c) de las de Procedimiento Civil, regula lo relativo a la presentación de una moción de desestimación por falta de prueba suficiente o *non suit.* 32 LPRA Ap. V, R. 39.2 (c). En particular, la citada regla dispone lo siguiente:

> (c) **Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada,** sin renunciar al derecho de ofrecer prueba en caso de que la moción sea declarada "sin lugar", **podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno.** El tribunal podrá entonces determinar los hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal lo disponga de otro modo en su orden de desestimación, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido

acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos. *Id.* (Énfasis nuestro).

Presentada una moción al amparo de la Regla 39.2 (c), el tribunal está autorizado, luego de que la parte demandante presente la prueba, a aquilatarla y a formular su apreciación de los hechos, según la credibilidad que le merezca la evidencia. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011). No obstante, esa facultad se debe ejercitar después de un escrutinio sereno y cuidadoso de la prueba. *Romero Arroyo y otros v. ELA*, 139 DPR 576, 579 (1995); *Roselló Cruz v. García*, 116 DPR 511, 520 (1985). En caso de duda, se debe requerir al demandado que presente su caso. *Roselló Cruz v. García, supra.* En ese momento, le corresponde al tribunal decidir si la prueba de la parte demandante es suficiente para sustentar su causa de acción. *Rivera Figueroa v. The Fuller Brush Co., supra.*

Si bien la apreciación de la prueba realizada por el foro sentenciador merece deferencia por parte de los foros apelativos, la severidad que implica la desestimación de una causa de acción exige que los tribunales actúen con especial cautela al atender una moción al amparo de la Regla 39.2(c), pues esta conlleva la terminación de la reclamación del demandante y de su día en corte. *Id.*

### E. Ley Contra el Despido Injustificado

La Ley 80, *supra*, tiene como finalidad principal proteger al trabajador de actuaciones arbitrarias del patrono y, a la vez, establecer remedios económicos dirigidos a disuadir el despido sin justa causa. Exposición de Motivos de la Ley Núm. 80-1976; *SLG Torres Álvarez v. Centro de Patología Avanzada*, 193 DPR 920, 929 (2015). Esta ley aplica a aquellos empleados de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) estén contratados sin tiempo determinado; (2) reciban una remuneración; y (3) sean despedidos de su cargo, sin que haya mediado justa causa.

*Whittenburg v. Col. Ntra. Sra. del Carmen*, 182 DPR 937, 950 (2011). En ese sentido, el estatuto persigue un doble propósito: coercitivo, al desalentar prácticas patronales de despedir a empleados sin que medie justa causa, y reparador, al proveer remedios proporcionales a los daños sufridos por el trabajador despedido injustificadamente. *González Méndez v. Acción Social et al.*, 196 DPR 213, 229 (2016).

No obstante, la Ley 80 no prohíbe el despido en sí mismo, sino que delimita las circunstancias en que este puede considerarse válido. *Rivera Figueroa v. The Fuller Brush Co., supra*, pág. 904; *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 377 (2001). A esos efectos, el Artículo 2 de la Ley 80 ofrece una lista con ejemplos de situaciones que constituyen justa causa, entre ellas: patrones de conducta impropia o desordenada del empleado; desempeño deficiente o negligente; violaciones reiteradas a reglamentos razonables del patrono; cierres o reorganizaciones de la empresa; cambios tecnológicos; o reducciones en volumen de producción o ventas. 29 LPRA sec. 185b; *Rivera Figueroa v. The Fuller Brush Co.*, supra, págs. 904-905.

El Tribunal Supremo ha reconocido que dicho listado no es taxativo, pues el concepto de "justa causa" es dinámico y debe evaluarse a la luz de las circunstancias particulares que afecten el buen y normal funcionamiento del establecimiento. Art. 2 de la Ley 80, *supra*, 29 LPRA sec. 185b; *González Santiago v. Baxter Healthcare of PR*, 202 DPR 281, 300 (2019); *SLG Torres Álvarez v. Centro de Patología Avanzada, supra*, pág. 930, citando a *Srio. del Trabajo v. G.P. Inds., Inc.*, 153 DPR 223, 243 (2001). En lo esencial, un despido será justificado siempre que responda a razones legítimas razonablemente relacionadas a la ordenada marcha y normal funcionamiento de la empresa en cuestión, y no al mero capricho patronal. *Díaz v. Wyndham Hotel Corp., supra*, pág. 377.

De ahí que los patronos conserven la facultad de adoptar reglamentos razonables para asegurar la buena marcha de la empresa y, ante violaciones reiteradas o faltas graves, imponer el despido como sanción, incluso en casos de una primera falta cuya severidad ponga en riesgo el ambiente de trabajo o la estabilidad operacional. *SLG Torres Álvarez v. Centro de Patología Avanzada*, *supra*, págs. 930-931; *Srio. del Trabajo v. ITT*, 108 DPR 536, 543 (1979).

Además, no debe pasarse por alto que los patronos tienen "perfecto derecho a evaluar a su personal, a base de las normas de la empresa, y ello debe tomarse en consideración a los fines de determinar justa causa para el despido". *Srio. del Trabajo v. GP Inds., Inc.*, 153 DPR 223, 246 (2001).

### F. Ley Contra el Discrimen en el Empleo

La Constitución de Puerto Rico prohíbe el discrimen por motivos religiosos. Art. II, Sec. 1, Const. ELA, LPRA, Tomo 1. A esos efectos, la Ley 100 refuerza este mandato constitucional al prohibir, entre otros, el discrimen en el empleo por razón de religión. 29 LPRA sec. 146. La citada ley establece responsabilidad civil y penal contra patronos que incurran en prácticas discriminatorias en el reclutamiento, las condiciones de empleo o el despido de sus empleados. *Id.* Además, reconoce al trabajador afectado el derecho a reclamar daños y perjuicios. *Id.* En ese sentido, nuestro más Alto Foro ha expresado que el discrimen implica un trato desigual que no esté debidamente justificado. *Meléndez v. Asoc. Hosp. del Maestro*, 156 DPR 828, 838 (2002).

### G. Marco normativo en las reclamaciones por despido injustificado y discrimen en el empleo

La Ley 80 originalmente establecía una presunción de despido injustificado que revertía el peso de la prueba en el patrono demandado, para que este presentara evidencia de que el despido

se debió a una justa causa. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 987 (2022); *Díaz v. Wyndham Hotel Corp.*, *supra*, pág. 378. Cabe destacar que, "esa presunción se estableció para facilitar al empleado probar su caso, más no relevarlo de la necesidad de presentar evidencia alguna para probar sus alegaciones". *Segarra Rivera v. Int'l. Shipping et al.*, *supra*.

Sin embargo, la Asamblea Legislativa, a través de la Ley Núm. 4-2017, *supra*, eliminó esta presunción y devolvió el peso de la prueba a la parte demandante de conformidad a lo que establecen las Reglas de Evidencia. 32 LPRA Ap. VI, R. 110. Por lo cual, en el ordenamiento jurídico vigente el peso de la prueba corresponde al empleado que alegue que su despido fue injustificado.

De forma similar, en su concepción original, la Ley 100, al igual que la Ley 80, establecía una presunción controvertible de discrimen. *Segarra Rivera v. Int'l. Shipping et al.*, *supra*, pág. 988. No obstante, al aprobarse la Ley Núm. 4-2017, *supra*, también se eliminó la referida presunción que tenía el efecto principal de transferir al patrono demandado el peso de presentar prueba y persuadir al tribunal. 29 LPRA sec. 148; *Soto y otros v. Sky Caterers*, 2025 TSPR 3, 215 DPR ___ (2025).

La presunción que antes establecía la Ley 100 tenía como efecto principal trasladar al patrono, como parte demandada, la carga de presentar la prueba y convencer al tribunal. *Soto y otros v. Sky Caterers*, *supra*; *Ibáñez v. Molinos de PR, Inc.*, 114 DPR 42, 50 (1983). Por el contrario, si se trata de un caso *prima facie* de discrimen en el ámbito federal, únicamente se le impone al patrono la obligación de presentar prueba, mientras que el deber de persuadir al tribunal recaer siempre sobre la parte demandante, es decir, el empleado. *Soto y otros v. Sky Caterers*, *supra*.

Ahora, el Artículo 6.2 de la Ley Núm. 4-2017 dispone que:

> **Al aplicarse las disposiciones de cualquier ley de discrimen** o represalia en el empleo, **se reconocerá**

**lo dispuesto en la legislación y reglamentación federal, al igual que las interpretaciones judiciales de las mismas de aquellos tribunales con jurisdicción en Puerto Rico**, a los fines de asegurar interpretaciones consistentes en cuanto a términos o disposiciones similares, salvo que las disposiciones de la legislación local requieran una interpretación distinta. 29 LPRA sec. 123a. (Énfasis nuestro).

Es decir, en virtud de esta disposición, se adoptó, entre otros, el estándar probatorio elaborado por el Tribunal Supremo de los Estados Unidos en *McDonnell Douglas Corp. v. Green*, 411 US 792 (1973), aplicable a las reclamaciones por discrimen bajo el Título VII de la Ley Federal de Derechos Civiles de 1964, 42 USC sec. 2000e *et seq. Guías para la Interpretación de la Legislación Laboral de Puerto Rico*, Departamento del Trabajo y Recursos Humanos, 1ra. ed., 8 de mayo de 2019, pág. 157.

La norma de *McDonnell Douglas Corp. v. Green*, *supra*, establece que, para demostrar un caso *prima facie* de discrimen, el empleado tiene la carga inicial de alegar y probar unos elementos claves que siembren en la mente del juzgador de hechos la inferencia de que la persona: (1) pertenece a la clase protegida por la legislación; (2) está cualificada para el puesto; (3) fue objeto de una acción adversa; y (4) se benefició a otra persona que no pertenece al mismo grupo protegido. *Id.*, pág. 802; *Guías para la Interpretación de la Legislación Laboral de Puerto Rico, supra*, págs. 157-158.

Si queda establecido que se trata de un caso *prima facie*, se activa una presunción de discrimen a favor del empleado y le corresponde al patrono el peso de producir o presentar evidencia admisible de que actuación fue por una razón legítima y que no existe ánimo discriminatorio. *Soto y otros v. Sky Caterers, supra*; *McDonnell Douglas Corp. v. Green, supra*; *Guías para la Interpretación de la Legislación Laboral de Puerto Rico, supra*, pág. 158. Demostrada tal justificación, la carga de la prueba recae nuevamente sobre el empleado, quien deberá acreditar que la justificación del patrono no es genuina, sino que es un subterfugio

o pretexto para encubrir la verdadera motivación discriminatoria. *Joy Goncalves v. Plymouth County Sheriff's Department,* 659 F.3d 101, 105 (1st Cir. 2011).

En cuanto al "pretexto" que plantee el patrono, nuestro Tribunal Supremo ha expresado que el empleado lo puede demostrar, entre otras maneras:

> "[M]ediante evidencia circunstancial o estadística de otros individuos en la misma situación del demandante que, o bien se les ha discriminado por la misma razón, o bien han sido retenidos precisamente porque no pertenecen al mismo grupo minoritario". De esta manera, "[e]l demandante puede probar [el] pretexto de dos (2) formas: directamente, persuadiendo al juzgador de los hechos de que lo más probable hubo motivo discriminatorio, o indirectamente, demostrando que la explicación ofrecida por el patrono no es creíble". En cada caso particular, la procedencia del dictamen como cuestión de derecho dependerá de varios factores, incluyendo: (1) la solidez del caso prima facie del demandante; (2) el valor probatorio de la evidencia sobre la falsedad de la explicación del patrono, y (3) cualquier otra evidencia que apoye el caso del patrono y que pueda considerarse adecuadamente. *Soto y otros v. Sky Caterers, supra.* (Citas y énfasis en el original omitidos).

No obstante, una vez el patrono acredita que el despido respondió a justa causa, queda liberado de responsabilidad al amparo de la Ley 100. *Mestres Dosal v. Dosal Escandón,* 173 DPR 62, 73 (2008).

Por último, es preciso mencionar que, en *SLG Hernández Beltrán v. TOLIC,* 151 DPR 754 (2000), el Tribunal Supremo, interpretando la presunción que establecía antes el Art. 3 de la Ley 100, explicó que:

> [E]s importante tener presente que **el Art. 3 no altera en su totalidad el esquema probatorio que prevalece en nuestra jurisdicción, donde una vez presentada la demanda, le corresponde a la parte demandante en la vista en su fondo comenzar con la presentación de la prueba de sus alegaciones,** antes de que la parte demandada venga obligada a rebatirla. **Si la parte demandante no presenta prueba suficiente para sostener sus alegaciones, la parte demandada no tiene que defenderse, procede la desestimación de la demanda en esta etapa.** *SLG Hernández Beltrán v. TOLIC,* supra, pág. 774. (Énfasis nuestro).

Por ello, aun cuando la presunción de discrimen se mantuviera vigente, le corresponde al empleado: (1) el primer turno para presentar prueba y (2) que esa prueba sea suficiente para sostener sus alegaciones, de modo que la parte demandada se vea obligada a rebatir la presunción.

Así, el esquema probatorio vigente en Puerto Rico —tanto en reclamaciones por despido injustificado como por discrimen— es que el empleado tiene la carga inicial y principal de probar sus alegaciones en reclamos de despido injustificado y discrimen, salvo en aquellos casos en que, tras demostrarse un caso *prima facie*, el patrono debe ofrecer una justificación legítima y no discriminatoria para la acción adversa.

**III.**

La apelante sostiene que, al impedir el testimonio de la Gerente de Recursos Humanos, el foro primario no le permitió ventilar el caso en sus méritos, lo que supuso una violación al debido proceso de ley. Además, plantea que el TPI erró al acoger prematuramente la moción de desestimación, adjudicar credibilidad sin completarse el desfile de prueba y no considerar la prueba documental admitida. No obstante, un análisis detenido revela que tales señalamientos carecen de fundamento.

Del récord surge que la apelante pretendió llamar como testigo hostil a la Gerente de Recursos Humanos, la Sra. Liza Barreto, quien había sido anunciada únicamente por la parte apelada en el *Informe sobre Conferencia Preliminar entre Abogados*. El Tribunal reiteró que, conforme a su determinación previa sobre dicho *Informe*, todo testigo no anunciado por una parte no podía ser utilizado en el juicio. A tenor, le correspondía a la parte apelante realizar una oferta de prueba clara y específica para preservar el planteamiento, conforme a la Regla 104 de Evidencia, lo cual no ocurrió. 32 LPRA Ap. VI, R. 104.

Asimismo, del expediente se desprende que el Tribunal concedió a la apelante el primer turno para presentar su prueba, conforme a la eliminación de las presunciones establecidas bajo la Ley 80 y la Ley 100. La apelante presentó únicamente su testimonio y, al no anunciar otros testigos ni presentar evidencia adicional, sometió el caso a la consideración del tribunal. Por ello, cuando la parte apelada presentó su moción de desestimación al amparo de la Regla 39.2 (c) de Procedimiento Civil, el foro de instancia estaba facultado para evaluar la suficiencia de la prueba presentada y, de resultar insuficiente, a dictar sentencia de desestimación. *Rivera Figueroa v. The Fuller Brush Co.*, *supra*, pág. 916.

En cuanto a las adjudicaciones de credibilidad que hizo el TPI, no se trató de un exceso de autoridad judicial, sino de un ejercicio legítimo de la facultad que reconoce la Regla 39.2 (c), que permite aquilatar la prueba del demandante o promovente al concluir su presentación.

Por otro lado, no es cierto que se hayan ignorado las estipulaciones o documentos admitidos. Como surge de las determinaciones de hecho, el foro primario tomó en consideración las amonestaciones, evaluaciones de desempeño, la política contra el acoso laboral y la suspensión final, concluyendo que reflejaban un patrón de conducta impropia constitutivo de justa causa bajo la Ley 80.

Del expediente surge que la apelante incurrió en una serie de conductas que resultaron en distintas amonestaciones desde el año 2013 hasta su suspensión en 2022 y final despido en 2024. Del mismo modo, a través de las evaluaciones que fueron consideradas por el TPI, si bien se determinó que la apelante había tenido buenos resultados en términos generales, para las del año 2015, 2016 y 2019 se le señaló que debía mejorar su comunicación y comportamiento para con sus compañeros. Aunque para la

evaluación del 2021 se le reconoció una mejoría respecto a los señalamientos sobre su conducta con los compañeros, en 2022, con la suspensión de empleo y sueldo, nuevamente la Compañía determinó que la apelante "había incurrido en conducta contraria a la política de acoso laboral [...], que ésta fomentaba un ambiente de trabajo hostil, que desacreditaba los procesos de la Compañía, que su comportamiento era inaceptable y que la Compañía no aprobaba ese tipo de conducta y ambiente en el lugar de empleo."

Por ello, debemos concluir que, aunque la última amonestación que recibió la apelante, que provocó a su vez su suspensión, fue en 2022, lo cierto es que la apelante venía mostrando un patrón de conducta similar desde 2013. Asimismo, la apelante no logró demostrar que luego de la suspensión, hasta la fecha en que fue despedida, había cesado el patrón de conducta que le había sido señalado por el patrono durante los años previos.

En cuanto al señalamiento de que el TPI no aplicó el marco normativo de la Ley 80 y la Ley 100, el récord refleja lo contrario. El foro primario expresó que, a raíz de la Ley Núm. 4-2017, las presunciones favorables al empleado quedaron eliminadas y, por tanto, correspondía a la parte demandante o promovente el peso inicial de la prueba. Además, utilizó el estándar de *McDonnell Douglas Corp. v. Green, supra*, reconociendo que la carga inicial era de la apelante para establecer un caso *prima facie* de discrimen.

Establecido que la parte apelante tenía el peso de probar su caso, en cuanto a la alegación de que el despido fue discriminatorio le correspondía demostrar primero que se trataba de un caso *prima facie* de despido por discrimen y, en caso de que lo probase, entonces le correspondía a la Compañía o al patrono demostrar una razón justificada y no discriminatoria para el despido. Por otro lado, en cuanto a la alegación de que el despido fue injustificado, la apelante

tenía el peso de probar que no existía justa causa para su despido y que el mismo fue caprichoso.

No obstante, según la apreciación del tribunal, la apelante no logró acreditar ni su pertenencia a una clase protegida —en este caso a una religión en particular— ni que el despido respondiera a motivos distintos a las razones disciplinarias documentadas por la Compañía. Por tanto, lejos de omitir el marco normativo, lo aplicó correctamente al concluir que no se configuró un caso *prima facie* ni de despido injustificado ni de discrimen.

A su vez, respecto a la conclusión de que el despido fue justificado, la prueba documental y las estipulaciones evidencian que la apelante recibió múltiples amonestaciones por incumplir con políticas y buenas prácticas de la Compañía, fue objeto de una suspensión que incluía una advertencia final de despido, y aun así persistió en conducta contraria a la política de la empresa. Estos hechos se encuentran expresamente contemplados en el Art. 2 de la Ley 80 como justa causa para el despido. El tribunal no incurrió en error al así concluir, pues su determinación descansó en prueba admitida y en un patrón de conducta impropio acreditado.

## IV.

Por los fundamentos que anteceden, confirmamos la *Sentencia* dictada por el TPI.

Notifíquese.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones